<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MITCHELL SCHLEY, | |
| Plaintiff, | Civ. No.  08-3589 (DRD) |
| v. | <u>**O P I N I O N**</u> |
| MICROSOFT CORPORATION, a Washington Corporation, and MICHELLE GAMMER | |
| Defendants. | |

*Appearances by:*

Mitchell Schley, Esq.
24 Heather Way
East Brunswick, NJ 08816

*Appearing Pro Se*


Rosemary Alito, Esq.
K&L GATES LLP
One Newark Center, Tenth Floor
Newark, NJ 07102

*Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

Defendants, Microsoft Corporation and Michele Gammer, have moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Plaintiff, Mitchell Schley's claim against Microsoft for 1) promissory estoppel, 2) breach of contract, 3) breach of the implied covenant of good faith and fair dealing, and have moved 4) to dismiss all claims against Defendant Gammer pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.  For the reasons stated below, Defendants' motions to dismiss Plaintiff's claims for breach of contract and breach of the implied covenant of good faith will be granted, while Defendants' motion to dismiss the Plaintiff's claim for promissory estoppel and motion to dismiss all claims against Defendant Gammer for lack of personal jurisdiction will be denied.

## I. **Background**

Plaintiff, Mitchell Schley ("Schley"), resides in New Jersey and  is a former supervisory attorney with the Newark office of the National Labor Relations Board and an experienced corporate lawyer.  Between 1998 and 2006, Schley worked at the Bear Sterns investment firm as the Managing Director of the Legal and Compliance Department.  Schley alleges the following facts[1]:

In January, 2006, he responded to an internet job posting for a Senior Attorney position at Defendant Microsoft's headquarters in Redmond, Washington.  After two initial telephone interviews, Schley was interviewed by Microsoft's Associate General Counsel, Defendant

---

[1] Most of these allegations are contained in the complaint, and they are ones which will be considered when addressing the 12(b)(6) motions.  Certain of the facts contained in this section were set forth in Plaintiff's affidavit addressing the personnel jurisdiction issue and are not relevant to the 12(b)(6) motions.

Michele Gammer ("Gammer"), a Washington resident.  Following the successful telephone interviews, Schley traveled to interview with Gammer and other members of the legal department in person at the Washington office.  These interviews were likewise successful, and in late March Gammer contacted Schley in New Jersey to offer him the position.  Over the next month, Gammer and her associates negotiated the terms of the employment offer with the Plaintiff, making several phone calls to his New Jersey home telephone and sending emails to his home e-mail account, which he accessed from his home computer.

On April 28, Gammer and her associates sent a finalized employment offer to Schley's home, and he subsequently signed and returned the offer.  The offer provided that Microsoft would employ Schley in the position of Senior Attorney in their Washington office, where he would report directly to Gammer.  In addition to listing compensation, bonuses, and other benefits, the employment agreement stated that Schley was being offered at-will employment, that his employment was terminable at any time without cause, and that his employment agreement was not a contract for any minimum period of employment.  It further stated that his employment was contingent upon the successful completion of a background check and professional references as well as  the completion of a Form I-9 as required by US immigration regulations.  The start date for his employment was originally set for June 12, 2006.

After the agreement was signed, Gammer encouraged Schley to give notice of resignation to his employer, Bear Sterns, which he did on May 9.  Soon thereafter, Schley traveled to Washington to attend staff meetings and commence his search for a new home.  During his stay, Gammer recommended a real estate agent and encouraged him to look at specific neighborhoods, ultimately helping to facilitate the purchase of a home from a seller with whom she had a

personal relationship.  On May 22, Schley put down a $30,000 deposit on the new home before returning to New Jersey, where he placed his own home on the real estate market and began making preparations to relocate his family to Washington.

On or about June 6, Schley received a call from Gammer informing him that his background check had turned up a felony charge and that his start date would have to be pushed back to June 19 in order investigate the matter.  After receiving further details, Schley sent an email explaining that a former landscaper had filed a frivolous criminal complaint against him in 2001, and that the complaint had been dropped.  On June 14, Gammer called Schley to clarify the matter.  The following day, Schley faxed Gammer official documents verifying his explanation.  On June 16, 2006, three days before his start date, Gammer contacted Schley and informed him that his employment offer was being revoked despite the successful though belated completion of the background check process.  She then mailed an official offer revocation letter to Schley's home in New Jersey.  In total, Schley alleges that between February and June of 2006, Defendant Gammer contacted him on his New Jersey home and cellular telephones on no fewer than six occasions, and that she and her associates sent no fewer than twenty emails to his home email account.

With $30,000 invested in the Washington home, Schley completed the purchase and instructed his broker to sell the house as quickly as possible.  The house was sold two months later, on August 10.  For two years, Schley has been unable to obtain employment, and he alleges severe financial and emotional damages as a result of Defendants' actions, including loss of salary, lost earning capacity, loss of professional reputation, expenses involved in seeking new employment, and emotional damages from anxiety, humiliation, and embarrassment.

4

The Plaintiff has sued both Microsoft and Gammer, alleging 1) promissory estoppel, 2) breach of contract, 3) breach of the implied covenant of good faith and fair dealing, 4) fraud and misrepresentation, 5) reckless misinterpretation, 6) negligent misrepresentation, 7) intentional infliction of emotional distress, 8) reckless infliction of emotional distress, and 9) negligent infliction of emotional distress.  Defendants Microsoft Corporation and Michele Gammer have moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Plaintiff's claim against Microsoft for 1) promissory estoppel, 2) breach of contract, 3) breach of the implied covenant of good faith and fair dealing, and 4) to dismiss all claims against Defendant Gammer pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdictions.

## II.  Standard of Review for 12(b)(6) Motions to Dismiss

Defendants have moved to dismiss three of the Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6).  The Supreme Court recently clarified the Rule 12(b)(6) standard in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007).  That case abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 127 S.Ct. at 1965, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation."  Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

It is not necessary, however, for a complaint to allege specific facts that conclusively establish a right to relief.  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atl., 127 S.Ct. at 1964).  A complaint is adequately pled as long as it includes facts sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Id. (internal citations omitted).  Additionally, in evaluating a motion to dismiss, a court must consider only what is alleged in the complaint and any documents incorporated by reference into the complaint.  Fed.R.Civ.P. 10(c).  In this case, because the Plaintiff's employment agreement is referenced in his complaint, it must be considered in evaluating the Defendants' 12(b)(6) motion.

### III.  Jurisdiction and Choice of Law

This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  A federal court sitting in a diversity suit must apply the choice of law rules of the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).   New Jersey has applied two separate choice of law standards for contract and tort claims.  The standard applied in contract claims is based on "the 'most significant relationship' test enunciated in the Restatement (Second) of Conflict of Laws §188 (1971)." State Farm Mut. Auto. Ins. Co. v. Simmons' Estate, 84 N.J. 28, 34 (N.J. 1980).   In contrast, the standard applied in torts claims is based on the "governmental interest test," with guidance from  REST 2d CONFL § 145.  Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007). Of course, before getting to either analysis, a court must first determine on an issue by issue basis whether there is a conflict between the laws of the respective states.  Thus, the first step in evaluating the Defendant's motions to dismiss  requires a determination as to whether there is an actual conflict between the Washington and New Jersey laws governing each of the Plaintiff's

three claims.

### IV.  Claim for Promissory Estoppel

To begin with, both Washington and New Jersey have adopted the approach to promissory estoppel established in § 90 of the Restatement (Second) of Contracts, which permits a plaintiff to recover where the following criteria are met:

> "(1) [there is] a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise."

Pop's Cones, Inc. v. Resorts Intern. Hotel, Inc., 307 N.J.Super. 461, 469 (N.J.Super.A.D. 1998) (explaining that "we rely upon principles of promissory estoppel enunciated in Section 90 of the Restatement (Second) of Contracts"); Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 171 (1994) (citing Restatement (Second) of Contracts § 90 as a guideline for the analysis of promissory estoppel claims).  However, this court still must determine whether New Jersey and Washington recognize promissory estoppel claims in the at-will employment context.

New Jersey courts clearly have recognized the validity of such claims.  In  Peck v. Imedia, Inc., 293 N.J.Super. 151, 154 (N.J.Super.A.D. 1996), the defendant employer extended an at-will employment offer to the plaintiff and encouraged her to leave her desktop publishing business and clients  in Boston and relocate to New Jersey.  After the plaintiff found an apartment in New Jersey, made preparations to move, and gave up her clients, the employer changed his mind and rescinded the offer before her official start date.  Id. at 157.   The plaintiff brought a claim for promissory estoppel alleging detrimental reliance on the promise of employment, and her claim

was dismissed on the grounds that promissory estoppel was inapplicable to an at-will

employment contract.  Id. at 159.   On appeal, the Appellate Division reversed the lower court,

allowing the plaintiff to bring her promissory estoppel claim and  reasoning that:

> There is merit to the view that it "would be absurd to require an employer ... to actually
> employ the applicant for one hour or one day so that the [at-will] employee could then
> be discharged,"   but what the cases applying the promissory estoppel doctrine recognize
> is that there may be losses incident to reliance upon the job offer itself, even though the
> employer can terminate the relationship at any time. Here plaintiff alleges that she gave
> up her business and clients in Boston and sustained losses in moving to New Jersey in
> reliance on the offer she had accepted.

Id. at 167 (internal citations omitted); see also Bonczek v. Carter Wallace, Inc., 304 N.J.Super.

593, 599 (N.J.Super.A.D. 1997) ("even when a job is terminable at will, a promissory estoppel

claim can arise from revocation of a job offer").   Thus, there is no question that  New Jersey law

allows claims of  promissory estoppel related to the revocation of an at-will employment offer.

While there have been no identical cases under Washington law, the Supreme Court of

Washington  has explicitly stated that they would be amenable to promissory estoppel claims

brought by at-will employees so long as the plaintiff can establish each element of his claim.  See

Havens, 124 Wash.2d at 173-74.  In Havens, the court found that an at-will employee had failed

to demonstrate a "clear and definite promise" necessary to support damages for  promissory

estoppel, but indicated that at-will employment was not incompatible with the doctrine, noting:

>  We agree with the weight of authority that where the terminable at will doctrine
> is concerned, the promise for promissory estoppel must be a "clear and definite
> promise". [...] The requirement of a clear and definite promise is consistent with
> this state's terminable at will doctrine[...] The promise must also be one which the
> promisor would reasonably expect to cause the promisee to change his position in
> reliance on the promise.

Id. (internal citations omitted); See also Thompson v. St. Regis Paper Co.,  102 Wash.2d 219,

230 (Wash.1984) (finding that promises made in an employee manual may be enforceable where an at-will employee reasonably relies on them); Flower v. T.R.A. Industries, Inc., 127 Wash.App. 13, 31 (Wash.App. Div. 2005) (allowing a claim for promissory estoppel where there was no valid contract but plaintiff relied on defendant's statement that his employment "would last as long as [he] did not engage in gross misconduct").

The Defendants have cited Andrus v. State, Dept. of Transp., 128 Wash.App. 895 (Wash.App. Div. 2005) for the proposition that Washington courts have barred promissory estoppel claims by at-will employees.  However, Defendants have misinterpreted that case.  In Andrus, an engineering supervisor for the City of Olympia phoned the plaintiff and made him an at-will employment  offer to work as a city building inspector.  Id. at 897.   While compensation and benefits were not discussed, the plaintiff accepted the offer on the phone and expected to receive a faxed copy of a written employment offer the following day. Id. at 898.  However, the next morning the defendant called the plaintiff and informed him that the offer was being revoked based on a final reference check.  Id.  In the intervening 24 hours between the offer and its revocation, the plaintiff did not quit his current job or make any other preparations for his anticipated work as a building inspector.  Id. at 900.   The plaintiff brought a claim for promissory estoppel, and the court dismissed the claim, explaining that the plaintiff  "presented no evidence of reliance damages, e.g., moving expenses or a change in his current job status, which may have occurred in the one day he believed he was employed by the City."  Id. at 900.

The instant case is clearly distinguishable.  Unlike Andrus, Schley had received a written employment offer, engaged in extensive negotiations over compensation and benefits, was encouraged to purchase a new home and quit his job, and alleged extensive reliance damages

related to the change in his job status and the moving expenses related to his family's anticipated relocation to Washington.  See id.  There is nothing in the Andrus court's opinion to support the assertion that the facts alleged by Schley do not form a cognizable claim for promissory estoppel under Washington law.  Therefore, as Washington courts have stated that the doctrine of promissory estoppel is consistent with the doctrine of at-will employment, there is no conflict between the laws of Washington and New Jersey, and the law of the forum state,  New Jersey, will be applied.

Additionally, it should be noted  that even if there were a conflict of law in this case, New Jersey law would still apply.  A claim for promissory estoppel is distinct from a contract claim and is more analogous to a tort.  This is particularly the case where a plaintiff alleges, as is the case here, that he was lured into leaving his job and moving across the country by a false promise of employment.  Thus, in analyzing the Plaintiff's promissory estoppel claim, it would be proper to use choice of law applied to tort claims, which is the "governmental interest test," derived from  § 145 of the Restatement (Second) of Conflicts of Law (1971).  Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007).  Under this test, courts conduct a fact sensitive analysis and apply the law of the state with the "greatest interest in governing the particular issue."  Veazey v. Doremus, 103 N.J. 244, 248 (N.J.1986).  Making this determination first requires an assessment of the policies underlying the laws of each state.  Id.

In this case, New Jersey's recognition of  a cause of action for  promissory estoppel under these circumstances is premised on a desire to compensate prospective employees for "losses incident to reliance upon [a] job offer itself"  Peck, 293 N.J.Super at 167.  Defendants argue  that Washington has not recognized such a claim out of a desire to preserve the nearly unlimited

termination powers of at-will employers.  Assuming, arguendo, that Defendant is correct, New Jersey law would still apply in this case.  While Washington has an interest in governing its employment relations, that interest is greatly reduced where the plaintiff has not actually been employed by the defendant.  If there were a conflict here, the controlling factor with regard to the Plaintiff's promissory estoppel claim case would be the place of injury, New Jersey.  While the Plaintiff made preparations to relocate his family to Washington, including purchasing a home there, he never changed his residence, and he and his family have continued to suffer the economic and emotional consequences of his lost employment in the State of New Jersey.  In addition to its interest in ensuring compensation for resident tort victims, the state of New Jersey also has a direct stake in a case like this, because it could conceivably incur costs associated with the unemployment of residents who are wrongfully induced to quit their jobs.  Furthermore, the commentary on REST 2d CONFL § 145 holds  that "persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state," and there would be no reason to violate this general rule under these circumstances.   Thus, even if there were a conflict in the laws of Washington and New Jersey, New Jersey law would be applied in this case.

Finally, the Plaintiff clearly states a claim for promissory estoppel under New Jersey law, which  must meet  the following criteria:

> (1) [there is] a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise.

Pop's Cones,  307 N.J.Super. at 469.  Here the Plaintiff has alleged (1) that the Defendants made a clear and definite promise that they were giving the Plaintiff a highly paid position  at

11

Microsoft, (2) that the Defendants expected that he would quit his job and purchase a new home in reliance on this promise and actually encouraged him to do so, (3) that he did so in reasonable reliance on their promise, and (4) that, as a result,  he has suffered definite and substantial losses in the form of continued unemployment and lost wages, expenses associated with purchasing a new home in Washington, and emotional damages.  As the Plaintiff has sufficiently alleged each element of this claim,  the Defendant's motion to dismiss the Plaintiff's promissory estoppel claim will be denied.

### V.  Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

There is, however,  a definite conflict of law with regard to the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.  New Jersey has explicitly recognized such a claim, finding  that "the doctrine of 'good faith and fair dealing' applies where there is some type of employment contract, even if it is merely "at will."  Peck, 293 N.J.Super. at 168.  Once again, the court in Peck provides some guidance to interpreting this doctrine.  As discussed above, the employer in Peck extended an at-will employment offer to the plaintiff and encouraged her to leave her desktop publishing business and clients  in Boston and relocate to New Jersey.  Id. at 154.  After the plaintiff found an apartment in New Jersey, made preparations to move, and gave up her clients, the employer changed his mind and rescinded the offer before the plaintiff's start date but waited ten days before informing the plaintiff of the revocation.  Id. at 157.  The plaintiff brought a claim for breach of the implied covenant of good faith, and the defendant successfully moved for summary judgment on the ground that the doctrine of good faith was inapplicable to an at-will employment contract.  See id. at 159.  On appeal, the

12

Appellate Division reversed the lower court and held that the plaintiff had a cause of action based on losses flowing from the "defendant's lack of good faith and fair dealing attributable to any delay in expressing the decision to terminate the relationship." Peck, 293 N.J.Super. at 167; see also Bonczek, 304 N.J.Super. at 599 (finding that a claim for promissory estoppel was related to an employer's obligation to provide "a good faith opportunity to perform after a prospective employee has resigned from an existing position in reliance upon a firm job offer").   Thus, in the instant case, Schley has stated a cognizable claim under New Jersey law, as he has alleged that the Defendants, without reason and in bad faith,  revoked his employment offer three days before the scheduled start date after encouraging him to quit his job and purchase a new home.

The Plaintiff has not stated a claim, however, under Washington law.  While the Washington State Supreme Court has stated in dicta that "under some egregious circumstances an implied covenant of good faith may be appropriate" in an at-will employment contract, this standard has never been clearly delineated or acted upon, and the courts have consistently refused to allows claims for breach of good faith against at-will employers . Trimble v. Washington State University, 140 Wash.2d 88, 97, (Wash. 2000).  In Thompson v. St. Regis Paper Co., the Supreme Court of Washington explicitly refused to adopt a proposed exception to the at-will employment doctrine that would find "that in every employment contract there is an implied convenant of good faith and fair dealing[...]"  102 Wash.2d 219, 227 (Wash.1984).  The Court clarified the reasoning behind its rejection, noting that:

> An employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment and this exception does not strike the proper balance. We believe that "to imply into each employment contract a duty to terminate in good faith would ... subject each discharge to judicial incursions into the amorphous concept of bad faith."  Moreover, while an employer may agree to

13

> restrict or limit his right to discharge an employee, to imply such a restriction on that right from the existence of a contractual right, which, by its terms has no restrictions, is internally inconsistent.  Such an intrusion into the employment relationship is merely a judicial substitute for collective bargaining which is more appropriately left to the legislative process.                              .

Id. at 227-28 (internal citations omitted); see also Bakotich v. Swanson, 91 Wash.App. 311, 314

(1998) ( "[the] rule governing termination of at-will employees is generally that 'employers [can]

discharge employees for no cause, good cause or even cause morally wrong without fear of

liability' ").  Thus, the Washington court has clearly taken the position that it will not inject

additional provisions into an at-will employment agreement, particularly where the provisions

would be "internally inconsistent."  Thompson, 102 Wash.2d at 228.  Given that the Plaintiff's

employment offer in the instant case explicitly specified that it did not guarantee even a minimal

employment period, it would indeed be "internally inconsistent" to insert a good-faith obligation

to provide such a minimum period.  See id.  Therefore, because a Washington court would not

recognize the Plaintiff's cause of action alleging breach of an implied covenant of good faith

against an at-will employer,  there is a conflict between Washington and New Jersey law, and

this court must decide which state's law will be applied.

Whatever law governs the contract claim will govern the implied covenant of good faith

claim.  As established in State Farm, the standard used in making a conflict determination in a

contract claim is reflected in Restatement (Second) of Conflict of Law § 188 (1971), which holds

that the choice of law should favor the state with "the most meaningful connections with the

transaction and the parties in issue."  84 N.J. at 34.  This test requires a fact sensitive analysis of :

"(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of

performance, (d) the location of the subject matter of the contract, and (e) the domicile,

residence, nationality, place of incorporation and place of business of the parties." REST 2d CONFL § 188.  Additionally, the commentary to the Restatement notes that the justified expectations of the parties should be a guiding factor in analysis of contract claims because "[p]rotection of the justified expectations of the parties is the basic policy underlying the field of contracts." Id.

An analysis of these factors establishes that New Jersey courts would apply Washington law to the Plaintiff's contract claim.  In this case, two of the factors are irrelevant, as  the location of the contract's subject matter is inapplicable because this was not a contract for goods or insurance, and the place of negotiation is immaterial because negotiations were conducted over the phone and through email in both New Jersey and Washington.  An additional two factors are relevant but not persuasive.   First, although the Defendant's employment offer was accepted in New Jersey, the commentary to the Restatement suggests that "[s]tanding alone, the place of contracting is a relatively insignificant contact." Id.  Additionally, given that the Plaintiff resides in New Jersey and the Defendants reside in Washington, the residency of the parties is not determinative.

Far more important, however,  is the final factor, the place of performance.  The commentary to the Restatement observes that "[w]hen both parties are to perform in [a] state, this state will have so close a relationship to the transaction and the parties that it will often be the state of the applicable law even with respect to issues that do not relate strictly to performance." Id.   The essential fact that the contract was to be performed by both parties  entirely within the State of Washington is of great significance.  In fact, had performance of the contract begun, none of the parties would have had any connection to the State of New Jersey, as Plaintiff, in that

case, would have become a resident of Washington.  Consequently, the justified expectations of the parties in this case would have been that the contract would be governed by Washington law. Therefore, under the Restatement choice of law analysis adopted by the New Jersey courts, Washington state has "the most meaningful connections with the transaction and the parties in issue," and thus Washington law should be applied.  See REST 2d CONFL § 188.  As Washington law does not recognize an at-will employee's claim for breach of the covenant of good faith, the Defendant's motion to dismiss this claim will be granted.


## VI.  Claim for Breach of Contract

The Plaintiff also alleges that the Defendants breached a contract with him by revoking his employment offer.  However, a simple review of the employment offer itself establishes that this claim must be dismissed under the laws of New Jersey, Washington, or any other state.  The Plaintiff specifically alleges that the Defendants were bound to provide him with a position at Microsoft contingent only upon completion of a  background check, and that his offer could not otherwise be revoked.  While the employment offer did state that it was contingent upon "the successful completion of a background check and professional references," it does not provide any language to indicate that these are the sole contingencies.  In fact, the very next sentence provides an additional contingency, namely the completion of a Form I-9 as required by US immigration regulations.  More importantly, however, the paragraph preceding mention of the background check explicitly states the following:

> Please recognize that this offer letter is not a contract of employment for any specific minimum term and that the employment Microsoft offers you is terminable at will. This means our employment relationship is voluntary and based on mutual consent.

16

[...] Microsoft likewise may terminate your employment, at any time, for any reason, with or without cause or notice.

Thus, the employment offer clearly indicates that the Plaintiff was receiving an offer of at-will employment, that he could be terminated at any time, and that he did not have a contract "for any specific minimum term." The Plaintiff, a former supervisory attorney with the Newark office of the National Labor Relations Board and an experienced corporate lawyer, has alleged that despite the plain language of the employment offer, the Defendants were contractually bound to provide him with a minimum term of employment. This interpretation is clearly erroneous and contradicted by the common sense meaning of the language contained in the agreement. As the Defendants were not contractually bound to provide the Plaintiff with any minimum term of employment, the revocation of his offer cannot be a breach of contract. Consequently, the Plaintiff's claim for breach of contract will be dismissed.

### VII. Personal Jurisdiction over Defendant Gammer

The Defendants have also moved to dismiss all claims against Defendant Gammer pursuant to Federal Rule of Civil Procedure 12(b)(2), which requires a court to dismiss a complaint when jurisdiction over the defendant is lacking. In a diversity action such as this one, the district court determines whether personal jurisdiction exists by first looking to the forum state's long arm statute. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir.1998). A district court has personal jurisdiction over non-resident defendants "to the extent authorized under the law of the forum state in which the district court sits." Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir.1993). If the forum state's long arm statute would permit

personal jurisdiction over a defendant, the district court must then determine whether the exercise

of personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment.

IMO Indus., Inc., 155 F.3d at 259.

New Jersey's long arm statute permits the exercise of personal jurisdiction "to the fullest

limits of due process."  Id.  Thus, in New Jersey, the inquiry is simply whether the exercise of

personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause. Under the

Due Process Clause, personal jurisdiction depends on "the relationship among the defendant, the

forum, and the litigation."  Shaffer v. Heitner, 433 U.S. 186, 204 (1977).  Jurisdiction will only

be proper when "the defendant purposefully avails itself of the privilege of conducting activities

within the forum State," ensuring that "a defendant will not be haled into a jurisdiction solely as

a result of random, fortuitous, or attenuated contacts."  Burger King Corp. v. Rudzewicz, 471

U.S. 462, 475 (1985).  In order for an assertion of personal jurisdiction to comport with Due

Process, a defendant must have sufficient minimum contacts with the forum state such that he

could reasonably anticipate being haled into court there.  Id. at 476.

The plaintiff bears the burden of establishing the defendant's contacts with the forum

state that give rise to personal jurisdiction.  Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368

(3d Cir. 2002).  When no evidentiary hearing is held on the motion to dismiss, the plaintiff need

only present a prima facie showing of sufficient contacts with the forum state.  Miller Yacht

Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  However, the plaintiff may not rely on the

pleadings alone and "must sustain its burden of proof in establishing jurisdictional facts through

sworn affidavits or other competent evidence."  Patterson by Patterson v. F.B.I.,  893 F.2d 595,

604 (3d Cir. 1990).  In this case, Plaintiff has submitted a sworn declaration attesting to the facts

that form the basis of the jurisdictional analysis below, and therefore has provided sufficient evidence to overcome the Defendants' motion.

There are two ways that a plaintiff can establish personal jurisdiction: either by showing that the defendant had continuous and systematic contacts with the forum state (general jurisdiction) or by showing that the particular cause of action arose out of the defendant's activities within the forum state (specific jurisdiction). Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). In either case, the Court must take all of the plaintiff's allegations as true and resolve all factual disputes in favor of the plaintiff. Miller Yacht Sales, Inc., 384 F.3d at 97.

In this case, the Plaintiff admits that Defendant Gammer is not subject to general jurisdiction in the State of New Jersey. Consequently, this court need only address the specific jurisdiction analysis. The Court of Appeals for the Third Circuit has provided a clear summary of this jurisdictional analysis, noting:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum.. Second, the litigation must "arise out of or relate to" at least one of those activities.. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.' "

O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).

In the instant case, Plaintiff alleges that Defendant Gammer engaged in a series of contacts with New Jersey that meet the requirements for establishing specific jurisdiction. First, Plaintiff alleges that Gammer availed herself of the New Jersey labor market by expanding her search for job applicants to include New Jersey residents. Second, plaintiff alleges that over a

period of five months, Gammer and her associates engaged in a series of communications to investigate Plaintiff's qualifications and negotiate his employment offer, including six phone calls to the Plaintiff's New Jersey home and cellular phones and some 20 emails sent to the Plaintiff's home email account, which he accessed from his home computer in New Jersey. Finally, Plaintiff alleges that Gammer sent both the signed job offer and later the revocation letter to the Plaintiff's residence in New Jersey, and that before the offer was revoked, Gammer encouraged the Plaintiff to resign from his job and make other preparations to relocate from New Jersey to Washington, including putting his home in New Jersey up for sale and purchasing a home in Washington.

These activities satisfy the requirements of the O'Connor test.  First, Gammer purposefully directed her activities at the forum state by conducting extensive employment negotiations with the Plaintiff while he was in New Jersey and encouraging him to quit his job, thus availing herself of the New Jersey labor market and purposefully inducing the Plaintiff to take actions that she knew would affect him and his family in New Jersey.  Second, there is no question that the Plaintiff's promissory estoppel, contract, and tort claims all arise out of these actions.  And third, the extension of personal jurisdiction comports with fair play and substantial justice because  Gammer's alleged actions were not "'random,' 'fortuitous,' or 'attenuated,'" but rather represented a concerted effort to engage the Plaintiff in New Jersey and to induce him to take specific actions that she knew would harm him in his home state.  Gammer could foresee that her alleged contacts with the Plaintiff in New Jersey would cause the Plaintiff's injuries there, and thus she could reasonably foresee being haled into a New Jersey court.  The Court in Burger King noted that:

> Where individuals "purposefully derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject [a defendant] to the burdens of litigating in another forum for disputes relating to such activity.

471 U.S. at 473-74 (internal citations omitted).

Defendants additionally argue that jurisdiction over Gammer is improper because of the "fiduciary shield doctrine," which "operates to preclude the exercise of personal jurisdiction over nonresident corporate agents who act in the forum state solely in their role as corporate agents." Acteon, Inc. v. Vista Dental Products, 2006 WL 1207999, * 3 (D.N.J. 2006).  Under this doctrine, the defendants argue that this court's jurisdictional analysis may not consider actions taken by Gammer in her capacity as an employee of Microsoft.  To support this argument, Defendants cite two  unpublished decisions from the District Court for the District of New Jersey and one unpublished decision from the Court of Appeals for the Third Circuit, asserting that these three cases are evidence that "the doctrine is well-established in this Circuit and this District."  However these unpublished decisions are not binding on this court and by no means indicate that the fiduciary shield doctrine is good law in the Third Circuit.  In fact, the court in Acteon, one of the cases which the Defendants cite, explicitly rejected the fiduciary shield doctrine, finding:

> Whether "a defendant's contacts with the forum state made in his corporate capacity [may] be considered" in the personal jurisdiction analysis was thoroughly examined in Educational Testing Services v. Katzman, 631 F.Supp. 550, 555 (D.N.J.1986). Holding that the law of New Jersey allowed it to consider contacts with the forum made in a corporate capacity if the facts alleged supported individual liability, Id. at 559, the Court concluded that actions taken by an individual defendant in his "corporate capacity"

21

within New Jersey may be imputed to the defendant corporate officer individually. Id. at 557.

Id.

The fiduciary shield doctrine is not established law in Third Circuit or the District of New Jersey, and it will not be applied here. However, it is worth noting that even in courts where the fiduciary shield doctrine had been adopted, the doctrine would not necessarily bar the extension of jurisdiction over Gammer. In another New Jersey decision declining to apply the fiduciary shield doctrine, the court in In re Royal Dutch/Shell Transport Securities Litigation, 380 F.Supp.2d 509, 550 (D.N.J.2005) summarized the limitations of the doctrine under Fourth Circuit jurisprudence, noting:

> The Fourth Circuit has clearly established that the "fiduciary shield rule is solely a matter of statutory construction under state law and is not required under the due process clause." In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F.Supp.2d 334, 351 (D.Md.2004) (citing Western Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1200 (4th Cir.1989)). "While a forum cannot establish personal jurisdiction over foreign defendants based solely on their status as officers in a corporation that is alleged to have committed fraud in the United States, if the complaint sufficiently alleges that the defendants had a direct personal involvement in a tort committed in the forum state, then personal jurisdiction over the defendants does not conflict with the fundamental notions of fairness required by the due process clause." Royal Ahold, at 351

In this case, the Plaintiff has alleged that Gammer was personally involved in committing various torts, as well as promissory estoppel which is analogous to a tort, in New Jersey, and thus her actions would subject her to jurisdiction even under the fiduciary shield doctrine.

Thus, as the Plaintiff has met his burden in establishing this court's personal jurisdiction over Gammer, the motion to dismiss all claims against Gammer pursuant to Fed.R.Civ.P. 12(b)(2) will be denied.

## VIII. <u>Conclusion</u>

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's claims for

breach of the implied covenant of good faith and breach of contract will be granted, while

Defendants' motion to dismiss the Plaintiff's claim for promissory estoppel and motion to

dismiss all claims against Defendant Gammer for lack of personal jurisdiction will be denied.

The court will enter an order implementing this opinion.


*s/Dickinson R. Debevoise*
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**

**Dated:**        **November 24, 2008**